Orel BUSBY, Trustee in Bankruptcy for Fleet Drilling Company, Plaintiff,

v.

U. S. STEEL CORPORATION, Defendant.

Civ. No. 5577.

United States District Court
E. D. Oklahoma.

Jan. 26, 1965.

Calvert L. Cannon, Leslie B. Younger, Carloss Wadlington, Ada, Okl., for plaintiff.

Bonds, Matthews & Mason, Muskogee, Okl., John C. Irwin, Dallas, Tex., for defendant.

BOHANON, District Judge.

The plaintiff, Orel Busby, Trustee of Fleet Drilling Company, a bankrupt, brought this action in the Eastern District of Oklahoma against the United States Steel Corporation as defendant. The Trustee, Busby, and Fleet Drilling Company, the bankrupt, are citizens of the State of Oklahoma, with their principal place of business in the Eastern District; the defendant, United States Steel Corporation, Oil Well Supply Division, a corporation, is a citizen of the State of New Jersey, authorized to do business in the State of Oklahoma. The amount in controversy exceeds the sum of $10,000, exclusive of interest and costs, and this Court has jurisdiction over the parties and the subject matter.

On March 29, 1963, certain creditors of Fleet Drilling Company filed a Petition in the United States District Court for the Eastern District of Oklahoma, praying that Fleet Drilling Company be adjudged a bankrupt. On April 16, 1963, Fleet Drilling Company was adjudged a bankrupt. On May 31, 1963, Orel Busby, the plaintiff in this cause, was duly appointed Trustee in Bankruptcy of the Estate of Fleet Drilling Company and duly qualified and assumed the duties of his trust.

The Complaint is lengthy, verbose, and repetitious, consisting of twenty typewritten pages, and sets forth seven alleged causes of action. The Court will summarize these causes of action.

In the First Cause of Action, plaintiff alleges that Fleet Drilling Company had been insolvent for several years prior to the adjudication in bankruptcy, and that during this period of time it was controlled directly and indirectly by the defendant, U. S. Steel Corporation, Oil Well Supply Division, and was in fact a captive debtor. It is alleged that the defendant, U. S. Steel Corporation, exercised control over the bankrupt to the detriment of other creditors so as to secure an undue advantage or preference, and that the defendant instituted a plan or scheme designed to wrongfully obtain the assets of the bankrupt, and did obtain most of the assets of the bankrupt, requiring it to suspend operations as a drilling company. It is further alleged that the defendant, by acquiring and recording mortgages on assets of the bankrupt, and directing disbursements of a substantial part of all income upon both current and prior indebtedness owing to the defendant, said defendant was thereby able to secure a substantial preference and undue advantage over other existing creditors. Plaintiff further alleged that a fiduciary relationship, by reason of the

circumstances, was created and existed between the defendant and the bankrupt, and owed a duty to exercise the utmost fairness and good faith in its dealings with the bankrupt and for the protection of existing creditors, and that the defendant breached this trust relationship. It is further alleged that the defendant foreclosed certain mortgages on the equipment of the bankrupt corporation, and seized all of its drilling rigs, wherever located, for the purpose of securing payment of the indebtedness due from the bankrupt to the defendant, and for the further purpose of securing a preference over other creditors of the bankrupt. It is further alleged that the rigs and equipment were sold at private foreclosure sale for much less than the reasonable value of said rigs and equipment, and the defendant being the purchaser, thereby secured a preference over other creditors of the bankrupt. In substance, the above is the claim of the plaintiff on its First Cause of Action.

### Findings of Fact on First Cause of Action

The Court specifically finds from all the evidence, including the many exhibits introduced in evidence, that Fleet Drilling Company, the bankrupt, was not at any time a captive of, nor was it under the control of the defendant corporation, nor was the defendant at any time the alter ego of the bankrupt. The defendant did not at any time exercise either direct or indirect control of the proceeds of loans made by the defendant to the bankrupt so as to secure an undue advantage or preference to the defendant to the injury of other creditors of the bankrupt. The defendant did not institute a plan or scheme with the bankrupt to assume and exercise complete and continuous control over the acts or general transaction of business of the bankrupt, and the defendant did not secure a substantial preference or undue advantage over other existing creditors as to the income and the assets of the bankrupt by acquiring and recording mortgages on the assets of the bankrupt; the defendant's transactions with the bankrupt did not constitute

fraud or oppression upon other existing creditors, and there was no fiduciary relationship created or existing between the defendant and the bankrupt. The defendant did not follow or institute a course of conduct in its transactions with the defendant resulting in injury to other existing creditors, but at all times exercised the utmost fairness and good faith in its dealings with the bankrupt. On or about September 13, 1961, the bankrupt executed good and valid chattel mortgages to the defendant to secure certain promissory notes in the respective sums of $629,055.72 and $493,412.63. The payments on these notes thereafter became delinquent and the defendant took peaceable possession of the property included in said mortgages and conducted private foreclosure sales on all of said property and equipment listed in the mortgages, by and with consent of bankrupt's officers and authorized agents, and the defendant purchased all of said property at said private foreclosure sales, and paid the fair market value therefor, and gave credit to the bankrupt on its note indebtedness for the sale price of the property, and made a valid and legal purchase under valid and legal chattel mortgage foreclosure sales. John J. Fleet, President of the Fleet Drilling Company, the bankrupt, was not under the influence and control of the defendant and was not acting under duress at any time during his transactions with the defendant on behalf of Fleet Drilling Company, but all the transactions between the defendant and the Fleet Drilling Company, the bankrupt, and John J. Fleet, President of the bankrupt, were open and above board, and did not constitute a fraud upon Fleet Drilling Company, or its creditors.

Passing now to the Second Cause of Action, plaintiff alleges that within four months of the filing of the Petition in Bankruptcy, the defendant received, accepted, and obtained from the bankrupt an unlawful preference by securing the transfer to it of a great number of interests in producing oil and gas leases for credit upon antecedent indebtedness, which credit was allowed on or about

December 31, 1962, and that the credit so allowed was substantially less than the reasonable value of said leases, and at a time when Fleet Drilling Company was insolvent, and such fact was well known to the defendant, for the purpose of securing a preference to the defendant so as to allow it to receive a greater portion of its alleged debt than other creditors of the same class; that said assignments were void for the reason that the same were made without authority granted by the Board of Directors. That included in said oil and gas leases obtained by defendant from the bankrupt were certain oil and gas leases in Seminole County, Oklahoma, which were not covered by any mortgage or deed of trust executed in favor of the defendant, and the Trustee asks that these leases be turned over to him or that judgment should be rendered against the defendant for the full value of said leases.

### Findings of Fact on Second Cause of Action

The Court finds that prior to the four months immediately preceding the adjudication of bankruptcy of Fleet Drilling Company, it executed mortgages on oil and gas leases to the defendant to secure a note indebtedness owed to the defendant, above referred to, and said mortgages were duly recorded in the counties where the leases were located, as provided by law; payments on said note indebtedness became delinquent, and in lieu of foreclosure, Fleet Drilling Company agreed to assign the lease properties covered by said mortgages to the defendant for credit on its note account to the extent of the appraised value of these leases. The bankrupt, Fleet Drilling Company, employed a recognized firm of petroleum engineers to appraise the property, and that the said appraisal made was a fair and adequate appraisal based on the then fair market value of the properties. Assignments of these oil and gas leases were made under the authority of action taken by the Board of Directors of the bankrupt, Fleet Drilling Company, and were duly recorded by the defendant in the counties wherein the leases were located. Credit was given to Fleet Drilling Company for the appraised value of these properties on the note indebtedness on the 31st day of December, 1962. The amount of credit passed by the defendant to the bankrupt included the appraised value of the leases, including the Seminole County leases, which were not included in the mortgages from Fleet Drilling Company, bankrupt, to the defendant. The Seminole County lease assignments were made prior to the four months' period preceding bankruptcy, but were recorded within the four months' period preceding bankruptcy. (The Court will hereafter deal separately with the Seminole County leases.)

On the Third Cause of Action, plaintiff contends that certain rigs of the bankrupt, upon which the defendant had a mortgage, were taken by the defendant and converted to its own use for a wholly inadequate consideration, and for a sum far less than the reasonable value of said equipment, and that the equipment was not foreclosed as provided by law. On this cause of action plaintiff asks for judgment for an accounting and for judgment against the defendant for the value of said property at the highest value from the taking to the present time because of the alleged conversion.

### Findings of Fact on Third Cause of Action

The Court finds on the Third Cause of Action that its Findings of Fact with respect to the First Cause of Action are equally applicable here. The defendant had valid mortgages duly filed and recorded on the equipment in question, which were perfected prior to the four months' period preceding bankruptcy; that Fleet Drilling Company, bankrupt, defaulted in the payment upon its indebtedness, and the defendant took peaceable possession of the equipment under the terms of its mortgage and sold the same at private foreclosure sale, thereafter giving credit to Fleet Drilling Company, bankrupt, on its note indebtedness to the defendant for the sale price on said equipment. The Court finds that the sale price of the equipment, and the credits given for said

equipment, was fair and equitable, based upon the then existing fair market value of said equipment, and the sales were approved by officers of bankrupt.

The Fourth, Fifth, Sixth and Seventh Causes of Action will be treated together. In each of these causes of action, plaintiff claims that the defendant obtained from Fleet Drilling Company assignments of accounts covering funds due from certain oil companies for which Fleet Drilling Company was drilling under contract for certain companies oil and gas wells, and that at the time of each assignment, Fleet Drilling Company, bankrupt, was insolvent, which fact was known to the defendant, and said assignments were executed within four months prior to bankruptcy; and that at the time of the execution of each assignment by Fleet Drilling Company to the defendant, the defendant advanced Fleet Drilling Company a loan of a certain amount of money, and that the amount of the assignments by Fleet Drilling Company for drilling for these various oil companies exceeded the principal and interest on the note for money borrowed by Fleet Drilling Company in various amounts, depending upon the particular contract. The plaintiff prays for judgment for an accounting of the funds collected upon the various assignments of accounts, and that judgment be granted plaintiff for any amounts collected by defendant on said assignments over and above actual advances made by it upon said accounts.

### Findings of Fact on Fourth, Fifth, Sixth and Seventh Causes of Action

The Court finds on these causes of action that the defendant entered into a financing arrangement with Fleet Drilling Company, the bankrupt, in September, 1961, whereby defendant would advance funds to Fleet Drilling Company in the form of loans, secured by assignment of certain accounts receivable on drilling contracts with third parties, and that the loans were made on condition that Fleet Drilling Company would keep its open account with the defendant cur-

rent. The defendant had no other control over the proceeds of such advancements or loans, and beginning December 1, 1962, and within four months of bankruptcy, the checks paid by third parties to Fleet Drilling Company on drilling contracts assigned to the defendant were endorsed by Fleet Drilling Company and forwarded to the defendant. At times the checks would be in excess of the amounts advanced by the defendant on the accounts receivable but that Fleet Drilling Company would direct the defendant to apply the excess over the amount advanced to its open account with the defendant. Within the four months preceding bankruptcy, the accounts receivable assigned to the defendant and the amounts of checks received by Fleet Drilling Company and endorsed to the defendant are substantially correct, as alleged in the Complaint, and that the amounts supplied to the open account of Fleet Drilling Company are substantially correct as set out in the Complaint. All of the assignments of accounts receivable made by Fleet Drilling Company to the defendant were recorded in Pontotoc County prior to December 31, 1962, and thereafter all of said assignments were duly recorded in Oklahoma County. The assignments of accounts receivable were not limited to the note indebtedness recited in them, but the provision of the assignments was that all monies due Fleet Drilling Company on the particular drilling contract were assigned to secure not only the note indebtedness recited therein but to secure all of the indebtedness of Fleet Drilling Company to the defendant; that any applications to open accounts were made only to current open accounts. The financing transactions as herein related were made at arm's length with the utmost fairness by the defendant toward Fleet Drilling Company and its creditors.

The defendant vigorously denied all of the material allegations and charges in each of the several causes of action, thus joining the issues between the parties.

## Conclusions of Law

■ 1. The relief requested in the First Cause of Action is denied for the reason that under the facts found by the Court the transactions made and had between the defendant and the bankrupt, Fleet Drilling Company, were not voidable preferences under Section 60 of the Bankruptcy Act, nor were they fraudulent transfers under Section 70 of the Bankruptcy Act, because the necessary elements under either section were not present. There is no evidence of wrongdoing on the part of the defendant as would justify the setting aside of any of the transfers or granting any of the relief requested in the First Cause of Action.

■ 2. The relief prayed for in the Second Cause of Action is denied (except that which pertains to the Seminole County leases, which will be hereinafter discussed). The mortgages from the bankrupt to the defendant of the oil and gas leases, and the subsequent assignments of these leases to the defendant by the bankrupt, were not voidable preferences under Section 60 of the Bankruptcy Act, nor fraudulent transfers under Section 70 of the Act, the necessary elements being absent under both Sections 60 and 70.

■ 3. As to the Third Cause of Action, under the evidence and the facts, there has been no conversion of the drilling rigs and equipment foreclosed. The actions of the defendant in taking the rigs and equipment and their subsequent sale did not constitute a voidable preference under Section 60 or 70 of the Bankruptcy Act.

■ 4. The relief prayed for in the Fourth, Fifth, Sixth, and Seventh Causes of Action should be denied. The assignment of accounts receivable was for good, sufficient and valid consideration, and under the facts as found by the Court these assignments did not constitute voidable preferences under Section 60 of the Bankruptcy Act nor a fraudulent transfer under Section 70. The amounts applied to open accounts from checks endorsed by Fleet Drilling Company were applied under the provisions of the assignments and do not constitute either a voidable preference or a fraudulent transfer.

Considering now the transfer of the Seminole County leases from the bankrupt to the defendant, the Court is of the opinion and holds that the transfer of these properties constitutes a voidable preference. It should be noted that the assignment of each property in Seminole County is dated the 21st day of November, 1962, and recorded December 3, 1962. The execution date of the assignments is more than four months prior to the adjudication of bankruptcy, but the recording date of each assignment is less than four months from the adjudication of bankruptcy.

Title 11 U.S.C.A. § 96, provides:
"§ 96. Preferred creditors.

(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

"(2) For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. A transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of

the transferee. If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of the petition.

"(3) The provisions of paragraph (2) of this subsection shall apply whether or not there are or were creditors who might have obtained such liens upon the property other than real property transferred and whether or not there are or were persons who might have become bona fide purchasers of such real property."

■■ The plaintiff contends that the transfer is made when the instrument to the property is recorded, while the defendant contends that the transfer is made on the date of the execution of the instrument. Thus the turning point on this question so far as a voidable preference is concerned is to be decided on which date is applicable to effect a transfer. I find from reading 11 U.S. C.A. § 96, sub. a(2) that the effective date of the transfer is the date when the instrument is recorded. Transfers of interests in oil and gas leases in Oklahoma are treated in the same manner as transfers of real estate, and are subject to the recording statutes. See Davis v. Lewis, 187 Okl. 91, 100 P.2d 994; Gamble v. Cornell Oil Company, 260 F.2d 860 (10 Cir.). Under the section last cited, a bona fide purchaser could have obtained from the debtor a transfer of the rights in the property superior to the rights of the transferee any time prior to the date of the recording of the assignments to the transferee and therefore there was no actual transfer within the meaning of the Bankruptcy Act, until the assignments from the bankrupt to the defendant were recorded.

It was held in In re Schlinder (D.C. Mo.), 223 F.Supp. 512, that:

"Under section of Bankruptcy Act with respect to transfer of realty, date that deed of trust was recorded was the transfer date  *   *   * "

So the transfer date of the Seminole County leases involved in this case was the date of the recording of the assignments, which was less than four months from the date of adjudication of bankruptcy, March 29, 1963. It follows, therefore, that the transfer of these properties constituted a voidable preference.

■ The defendant, however, contends further that under Section 60, sub. c of the Bankruptcy Act (11 U.S.C. § 96) that it is entitled to a set-off against any judgment rendered against it by reason of this voidable transfer, to the extent of $21,456.83, the amount of its unsecured, open account, duly and properly filed with the Referee in Bankruptcy. Section 60, sub. c, supra, provides:

"(c) If a creditor has been preferred, and afterward in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

This section has no application to the case at bar because the property for which the alleged open account was furnished was not sold on credit without security of any kind.

■ Attached to the claim of the defendant filed with the Referee for alleged deficiency after the sale of the rigs taken by defendant in March, 1963, is a copy of the chattel mortgages on the rigs and other equipment, and under the terms of such mortgages, any property added to such rigs or other equipment or any replacement of parts thereof was covered by the lien of the mortgage, and the defendant claimed the right to take all of such property under the chattel mortgage covering the rigs and equipment

and did so. The burden was upon the defendant if it wished to claim a set-off under Section 60, sub. c, supra, to establish such set-off and to show every element required by the statute. This it failed to do. Admittedly the defendant had security under its chattel mortgages for all of the property or equipment sold to the bankrupt, even though it turned out to be insufficient to cover all of the indebtedness from the bankrupt to the defendant. So under all the circumstances the Court is of the opinion and so holds that the defendant is not entitled to set off its claim filed with the Referee in Bankruptcy against its liability for the value of the Seminole County properties.

A reputable petroleum engineering firm made a study of the value of the Seminole County properties, and others, and they found that as of August, 1963, these properties had a value of $14,583. The parties involved, Fleet Drilling Company and United States Steel Corporation, accepted this valuation as being the true value of the properties. The Court finds, and fixes the value of the properties as of the date of the assignments from Fleet Drilling Company to United States Steel Corporation, the 21st day of November, 1962, to be $14,583. Judgment will therefore be entered in favor of the Trustee and against United States Steel Corporation, Oil Well Supply Division, in the sum of $14,583, together with interest at the rate of six per cent per annum from the 21st day of November, 1962, until paid.

It is the further Judgment of the Court that the claims of United States Steel Corporation, Oil Well Supply Division, filed with the Referee in Bankruptcy, and refiled in this case, have been examined by the Court and are hereby approved and allowed.

It is the further Judgment of the Court that the Judgment herein rendered against United States Steel Corporation, Oil Well Supply Division, should be and the same is hereby allowed as an additional claim in the amount of such Judgment, against the bankrupt estate.