**In re BETHEL RESOURCES, INC., Debtor.**

**Larry E. STAATS, Trustee, Plaintiff,**

**v.**

**Dr. Ivan E. AMERINE, et al., Defendants.**

Bankruptcy No. 2–81–04550.
Adv. No. 2–85–0266.

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 17, 1987.

Sharon V. Fladen, William S. Pidcock, Canton, Ohio, for Rubicon Industries, Inc.

George M. Hauswirth, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Larry E. Staats, Trustee of Bethel Resources, Inc.

Larry E. Staats, Columbus, Ohio, Trustee.

Deborah L. Cook, Roderick, Myers & Linton, Akron, Ohio, for William and Marlene Dineen and Robert F. Linton.

## OPINION AND ORDER SUSTAINING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BARBARA J. SELLERS, Bankruptcy Judge.

On February 19, 1986 plaintiff Larry E. Staats (the "Trustee") filed a motion seeking summary judgment on his complaint against defendants William R. and Marlene J. Dineen, Allan F. and Frances E. Crisp, James A. and Dorothy I. Brown, Angelo Haidaris, Robert F. Linton, and Harold B. and Gloria P. Gintert (collectively "Motion Defendants"). Opposition to that motion for summary judgment was filed on behalf of the Dineens and Linton individually, and by Rubicon Industries, Inc. ("Rubicon"), an intervenor in this action and the assignee of the interests in the property held by the Crisps, the Browns, Haidaris, and the Ginterts. Default judgments in favor of the Trustee have been granted against 18 other defendants whose interests apparently were not assigned to Rubicon and who failed to answer the complaint.

The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H). Although the Trustee's complaint seeks to avoid certain transfers to the Motion Defendants and 49 other defendants not included in this motion on the bases that such transfers are either preferences pursuant to 11 U.S.C. § 547 or fraudulent transfers pursuant to 11 U.S.C. § 548, the motion for summary judgment is premised only upon the preference theory. For reasons stated below, the Court finds there is no question as to any material fact and the Trustee is entitled to judgment as a matter of law.

### FINDINGS OF FACT

The facts in this matter are essentially undisputed. The debtor is an Ohio corporation which was engaged in exploration for oil and gas and in the development of oil and gas wells. In connection with those activities, the debtor also sold non-producing working interests in oil and gas lease properties.

In 1979 and early 1980 the debtor offered units of non-producing working interests in the Moorhead # 1 oil and/or gas well to be drilled in Wayne County, Ohio. Each of the defendants purchased one or more of those unit offerings at $2,500 per unit. Upon sale of all offered units, each was said to represent 1.1904% of the non-producing working interest in the particular well. The accompanying Participation Agreement, which was part of the Offering Circular for this program, was executed by the debtor as Manager and by the Motion Defendants as Investors, and provided that the debtor "is or shall become the owner of 100% of the working interest" in the Moorhead lease; that the debtor proposed to drill a test well for oil and gas on that lease; and that the Motion Defendants wished to be joint venturers with the debtor in this project. In addition, the debtor as Manager, and the Motion Defendants as Investors agreed, in part, to the following:

### ARTICLE IV.

As soon as practicable after completion of the producing well, and upon execution of an Operating Agreement, a copy of which is attached to the Offering Circular, Investor shall be given an assignment, upon request, in recordable form, without warranty of title, in and to the tract(s) on which said wells are located,

of the interest described in Article I above. No assignment will be issued unless such test well(s) produce oil and/or gas in commercially paying quantities ... (Participation Agreement, p. 3).

The Offering Circular, on page 37, also states:

No actual assignment of working interest in recordable form will be issued to a participant unless a written request is made by the participant. If no request is made, the participant risks loss of his interest to a bona fide purchaser for value with or without actual notice of the participants interest. Only by requesting an assignment of working interest from the offeror and recording same upon receipt can a participant protect himself against a bona fide purchaser for value without notice.

The Motion Defendants subscribed to purchase certain units in this program and paid the debtor for the resulting working interests in 1979 or 1980. That commitment involved execution of a Subscription Agreement and, presumably, of the Participation Agreement.

The Dineens apparently purchased and paid for four (4) units or non-producing working interests of 4.7616% in this program. Linton purchased and paid for three (3) units or non-producing working interests of 3.5712%. All other Motion Defendants purchased and paid for two (2) units or non-producing working interests of 2.3808% each. The Court is not aware when the Operating Agreements were executed, but on or about September 8, 1981 the debtor executed assignments to the Motion Defendants of the purchased interests in the Moorhead well. Those assignments were recorded in the Recorder's Office of Wayne County, Ohio on September 22, 1981.

On November 13, 1981 an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the debtor. The debtor agreed to the entry of an order for relief and, on December 31, 1981, this case was converted to one under Chapter 11 of the Bankruptcy Code. That Chapter 11 case was reconverted to a Chapter 7 liqui-

dation on December 6, 1983, subsequent to the confirmation of a plan of reorganization, and the Trustee's complaint was filed on October 16, 1985. On December 17, 1985 the Crisps assigned their working interests to Rubicon. Similar assignments to Rubicon were made by the Browns on December 19, 1985 and by Haidaris and the Ginterts on December 27, 1985.

## ISSUES OF LAW

The Trustee asserts that the execution and perfection of the assignments to the Motion Defendants within ninety (90) days of the filing of the involuntary petition in bankruptcy were preferential transfers pursuant to 11 U.S.C. § 547. The Dineens and Linton, and all other Motion Defendants, through their assignee Rubicon, argue that the recordations of the assignments were not the actual transfers of the working interests, and that the working interests were transferred to the Motion Defendants in 1980 as personalty pursuant to a contract effective between the parties at the time the Subscription Agreements were accepted by the debtor. Therefore, according to the Dineens, Linton and Rubicon, the recordations are not legally significant with regard to the transfer of any ownership interests of the debtor.

## CONCLUSIONS OF LAW

The Bankruptcy Code requires seven (7) elements to be proven before a preference can be established pursuant to 11 U.S.C. § 547(b). Those elements are:

(1) a transfer;

(2) of an interest of the debtor in property;

(3) to or for the benefit of a creditor;

(4) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(5) made while the debtor was insolvent;

(6) made—

(A) on or within 90 days before the date of the filing of the petition; ...

(7) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under Chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The only legal issues contested by Rubicon in its response to the Trustee's motion for summary judgment are whether the transfers were made and whether the transfers occurred within ninety (90) days of the involuntary bankruptcy filing on November 13, 1981.

The Dineens and Linton, by also adopting the defenses set forth by Douglas and Roberta Sims in adversary No. 2–85–0265, in addition to the elements contested by Rubicon, also challenge the element of the "greater percentage test" as set forth in § 547(b)(5).

■ The time a transfer is made for purposes of a preference is controlled by the provisions of 11 U.S.C. § 547(e)(2):

(e)(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

    (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

    (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

    (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

    (i) the commencement of the case; or

    (ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

In order to find when a transfer is made pursuant to § 547(e)(2), however, it must first be ascertained how the interest transferred can be perfected. Section 547(e)(1), which defines "perfection" of a transfer, provides that:

(e)(1) For the purposes of this section—

    (A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

    (B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

■ State law determines the specific mechanism for perfecting the transfer of a property interest such that the transfer is protected from the adverse claims of a third party. Although there is some dispute as to whether the working interests sold to Motion Defendants were interests in real property as leasehold interests,[1] or interests in personalty relating and attaching only to the severed oil and gas,[2] no dispute exists as to the mechanism which must be used to perfect those interests regardless of their characterization. Those requirements are set forth in § 5301.09 of the Ohio Revised Code, which states:

All leases, licenses and assignments thereof or of any interest therein given or made concerning lands or tenements in this state, by which any right is granted to sink or drill wells thereon for natural gas and petroleum or either, or pertaining thereto, shall be filed for record and recorded in such lease record without delay ...

---

1. *In re Gasoil, Inc.,* 59 B.R. 804 (Bankr.N.D.Ohio 1986).

2. *Kelley v. The Ohio Oil Co.,* 57 Ohio St. 317, 49 N.E. 399 (1897).

No such lease or license is valid until filed for record, except as between the parties thereto unless the person claiming thereunder is in actual and open possession.

Section 5301.09 makes it clear that assignments of working interests in oil and gas leases must be recorded in the appropriate county lease records before the interest of the assignee is protected from adverse claims by a person not a party to the assignment. It is uncontested that the assignments of working interests from the debtor to the Motion Defendants were not recorded until September 22, 1981. Those recordings were necessary to effect perfection within the meaning of 11 U.S.C. § 547(e)(1)(A) or (B) because, until that date, Ohio law permitted the rights of a bona fide purchaser or of a judicial lien creditor to prevail over the rights of the Motion Defendants. See also *Busby v. U.S. Steel Corp.*, 237 F.Supp. 602 (E.D. Okla.1965).

■ Once it has been determined when perfection occurred pursuant to 11 U.S.C. § 547(e)(1), § 547(e)(2) must be consulted to ascertain the impact of that perfection date upon the date the transfers are "made." The transfers between the debtor and the various Motion Defendants took effect, alternatively, when the debtor accepted the Subscription Agreement; at the time the debtor acquired its ownership rights in the working interests such that the assignments could be made; at the time the well produced oil and/or gas in commercially paying quantities such that the obligation to make the assignment first arose;[3] or, at the latest, when the assignments were executed. Even that latest date, the execution date of September 8, 1981, was more than ten (10) days prior to the perfection date of September 22, 1981. Accordingly, pursuant to 11 U.S.C. § 547(e)(2)(B), the perfection date is the date these transfers were made. That date is within ninety (90) days of the filing of the involuntary bankruptcy petition against this debtor, and, therefore, the transfers are within the preference period.

■ The second contested element to be determined is whether the transfers were for or on account of antecedent debts owed by the debtor before the transfers were made. That element is easily shown, however, as the debtor's obligations to make the assignments arose when the Motion Defendants requested such an assignment after the well produced oil and/or gas in commercially paying quantities. That date would have been prior to or simultaneous with the execution of the assignments and, therefore, antedated September 22, 1981 when the transfers were made.

■ The only contested element remaining for decision is "the greater percentage test", more formally stated as whether the transfers enabled the Motion Defendants to receive more than they would have received solely as a distribution from the Trustee in this Chapter 7 case, given the payment priorities of Title 11, United States Code. The Trustee's affidavit, attached to his motion for summary judgment, states that unsecured creditors in this case will not receive a 100% dividend. That fact is uncontroverted. It is also clear that had the transfers of these interests not occurred, the Motion Defendants would merely have been unsecured creditors. Whatever they might have received from the estate, it would have been less than 100%. Therefore, the transferees' receipt of 100% of the net production attributable to their interests, in recognition of the assignment of their working interests, must be greater than the pro rata share they would receive as unsecured creditors.

The Motion Defendants also assert entitlement to a priority claim in the amount of post-petition oil or gas production proceeds from the Moorhead # 1 well. The Court finds, however, that had the transfers not occurred, the Motion Defendants could not assert any entitlement to post-petition oil and gas production proceeds, should any such proceeds exist. Accordingly, the Trustee has met his burden as to "the greater percentage test" as set forth in 11 U.S.C. §§ 547(b)(5) and (g).

---

**3.** 11 U.S.C. § 547(e)(3).

Based upon the foregoing, the Court finds that the transfers by assignment of certain non-producing working interests in the Moorhead #1 well and lease were transfers on account of antecedent debts of the debtor which were made within ninety (90) days of the filing of the involuntary bankruptcy petition which commenced this case. Accordingly, all elements of a preferential transfer have been shown against the Dineens, Linton, the Crisps, the Browns, Haidaris, and the Ginterts, and, by implication, against their assignee Rubicon. Therefore, the Court finds that the Trustee's Motion for Summary Judgment shall be, and the same is, hereby SUSTAINED. Judgment consistent with these findings will be entered by the Court.

IT IS SO ORDERED.

